# Richmond

EARL DAY v. COMMONWEALTH OF VIRGINIA.

March 7, 1955.

Record No. 4339.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Morris H. Hester*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General*, for the Commonwealth.

SMITH, J., delivered the opinion of the court.

The defendant, Earl Day, was indicted for attempted rape, and for robbery and sodomy against Della Claytor. The indictments were by consent heard together by a jury, which found the accused guilty as charged in each indictment and fixed his punishment at death for attempted rape, eight years confinement in the penitentiary for robbery, and three years confinement in the penitentiary for sodomy. To the judgments entered pursuant to the verdicts, we granted this writ of error.

We are asked to reverse these judgments on the grounds that the trial court erred in admitting certain evidence, and in overruling the defendant's motion to set aside the verdicts because contrary to the law and the evidence.

The testimony of the witnesses was not transcribed but the facts of the case as certified in narrative form by the trial court, while not pleasant to relate, are substantially as follows:

The prosecutrix, Della Claytor, a colored woman 47 years of age, testified that in returning to her home at 1724 Locust street in Lynchburg on the night of February 1, 1954, she got off a bus at the corner of Locust and Grace streets where she saw and spoke to a young colored man, who she later learned was Earl Day, the defendant. As she proceeded on her way home he grabbed her by the arm and pulled her along the street, and when she screamed he placed his hand over her mouth and threatened to kill her if she cried out. He dragged her into a vacant lot and attempted to have sexual intercourse with her but was unable to accomplish his purpose because he could not have an erection.

She further testified that when the defendant was unable to consummate sexual intercourse, he forced her to let him put his penis into her mouth. He also demanded a wrist watch she was wearing and she handed it to him. She testified that she acceded to his demands because she was afraid of him.

·They went to her home after the defendant learned that

Della Claytor's daughter and the daughter's two small children were the only persons in the house. Upon arrival her daughter asked what had happened to her and, because she was afraid the defendant might hurt her or her daughter and the small children, she said she had fallen and hurt her face. Soon thereafter two of her neighbors, Rosa Nesbit and Willie Billups, came in and after a short conversation the defendant and the neighbors left the house, but the defendant returned shortly thereafter, broke the lock on the door and forced Della Claytor to go with him. They were later found by the city police five or six blocks from her home.

Willie Billups, a young colored man whose testimony was corroborated by Rosa Nesbit, testified that he went to Della Claytor's house with Rosa Nesbit; that he noticed Della Claytor's clothes were dirty and it appeared she had been beaten about the face. He further testified that he remarked to the defendant that his clothes were also dirty and inquired whether he, Day, was responsible for what had happened to Della Claytor, thereupon Day asked him whether he wanted to make any trouble about it and Billips replied that he did not.

Annis Irvin, the daughter of Della Claytor, testified that she was at home with her two small children when her mother came in with Earl Day, whom she had not seen before. She described her mother's condition; was suspicious of Day and called the police after he forced her mother to go with him.

Officer J. M. Holloran testified that at 7:46 p. m., on February 1, 1954, he received a complaint from the home of Della Claytor, who was not there when he arrived; but that after searching the neighborhood he located her and Earl Day at the corner of Pearl and Madison streets, some five or six city blocks from the home of Della Claytor. He also testified that Day was pulling her along the street; that she had on one stocking and the other was partially on her foot and partially off; that both of her shoes were missing and that she told him the defendant had attempted to rape her and had mistreated her.

Officers W. H. Phlegar and J. E. Franklin testified that when they questioned the defendant at police headquarters he told them he had met Della Claytor on Carrolton Road, which is in Campbell county; that he and Della Claytor had been at some house where he had bought whiskey for both of them and that he had taken her home in a cab. They further testified that Day had been drinking but that Della Claytor had not.

The following day these officers took Della Claytor over the route she had described to them the night before and when they reached the vacant lot, where she said the three offenses occurred, they found a woman's glove which matched a glove she still had in her possession. They also testified that Della Claytor had bruises on her arm and face and that she was unable to walk without assistance.

Mrs. D. P. T. Stanford, Jr., a young white woman, testified for the Commonwealth as shown by the certificate of evidence, "that she was standing on the corner of Grace and Knight Streets waiting for a bus at 7:10 o'clock on the night of February 1, 1954. While she was standing there she stated she saw the defendant, or a man she felt reasonably sure was the defendant, Earl Day, coming towards her. She was frightened and started to run and he started to run after her. She saw the bus coming and she ran to the bus and he chased her to the door of the bus. As she was getting on the bus she heard him call something like, 'You had better run.' In her testimony she said the man was the defendant but she did not see his features but the man wore a white cap and a jacket like the ones belonging to the defendant and which were exhibited to her during her testimony; the ones he was wearing when arrested. * * * At this time [upon returning over the same route on the next bus] she saw the same man who had chased her at Knight and Grace Streets standing near the corner of Locust and Grace Streets, which was one city block from Grace and Knight Streets. She never did see the man's face so as to positively identify him but she did notice he was wearing a similar cap and jacket to

those worn by the man who had chased her." This evidence was admitted over the objection of defendant after it was heard in the absence of the jury.

The defendant, a twenty-three year old colored man, testified that he had been living in Lynchburg about two years; that he was married and had one child, and that at the time of his arrest he was working as a janitor in a colored high school. He denied committing any of the crimes charged and testified that he had possession of Della Claytor's watch because she asked him to keep it for her.

He testified that on February 1, 1954 he went to the neighborhood of Della Claytor's home with a boy who lived somewhere near there but he did not know the boy's last name nor where he lived; that he met Della Claytor on Grace Street, and after a short conversation he bought some whiskey but he did not know who sold it to him. He further testified that after he drank some of the whiskey they went to her house and when they entered her daughter asked her what she was doing with that young man. Her daughter then told him she did not like his looks and told him to get out of the house; he started to leave and when he got outside Della Claytor came out behind him and went with him voluntarily to the place where he was arrested. He also testified that he had never been in any trouble or convicted of any crime and that he did not chase the witness, Mrs. D. P. T. Stanford, Jr.

Before his trial and on motion of the attorney for the Commonwealth the defendant was committed to Central State Hospital for mental examination on March 3, 1954, and on June 4, 1954 the superintendent of that institution reported that the defendant knew right from wrong and showed no symptoms of mental illness. See Code, § 19-202.

The defendant contends that the testimony of Mrs. Stanford to the effect that he was the man who chased her at the corner of Grace and Knight streets on February 1, 1954 was inadmissible, because this alleged act was entirely separate from the offenses alleged to have been committed

against Della Claytor and because it served only to inflame the minds of the jury and to prejudice them against him. The Commonwealth, on the other hand, contends that this evidence was admissible not only on the ground that it tended to identify the accused by placing him in the vicinity at the time of the alleged assaults on Della Claytor, but also to show his intent and plan to make an assault on some woman.

The leading case on the principle here involved is *Walker* v. *Commonwealth*, 1 Leigh (28 Va.) 574, 580, where a man was indicted for stealing a watch and evidence was admitted that he had at another time stolen a coat. In setting aside his conviction the court held that this evidence was inadmissible because it was "a distinct charge, which the prisoner was not called on to defend, which he could not be prepared to defend, and which had no such necessary connection with the transaction then before the court as to be inseparable from it."

The court further said it frequently happens "that as the evidence of circumstances must be resorted to for the purpose of proving the commission of the particular offense charged, the proof of those circumstances involves the proof of other acts, either criminal or apparently innocent. In such cases, it is proper, that the chain of evidence should be unbroken. If one or more links of that chain consist of circumstances, which tend to prove that the prisoner has been guilty of other crimes than that charged, this is no reason why the court should exclude those circumstances. They are so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude them, more than other facts apparently innocent. * * * But if the circumstances have no intimate connection with the main fact; if they constitute no link in the chain of evidence; then, supposing them innocent, their admission, to be sure, may do no harm, yet they ought to be excluded,

because they are irrelevant; but if they denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to prejudice the minds of the jury; and for this additional reason they ought to be excluded." 1 Leigh (28 Va.), at page 576. See *Roy* v. *Commonwealth*, 191 Va. 722, 62 S. E. (2d) 902; *Zirkle* v. *Commonwealth*, 189 Va. 862, 55 S. E. (2d) 24.

*Barber* v. *Commonwealth*, 182 Va. 858, 30 S. E. (2d) 565, clearly illustrates the type of situation in which such evidence is inadmissible. The accused was indicted for attempted rape and at his trial the court admitted evidence which showed that he had committed a like offense against another woman. The purpose behind the introduction of this evidence was to show the accused's attitude "towards women." In holding that this evidence was inadmissible, and upon an exhaustive review of the cases on the subject the court said: "We know of no case in Virginia in which, on trial for attempted rape, evidence of another attempted rape of another woman has been admitted; but the principle involved has frequently been passed upon." 182 Va., at page 864.

So also in *Limbaugh* v. *Commonwealth*, 149 Va. 383, 140 S. E. 133, where a chiropractor was indicted for seduction of a patient evidence was admitted to show that he had made improper advances to his stenographer. This evidence was introduced for the purpose of showing the accused's "attitude in his intercourse with women." In holding that this was error, Judge Burks said: "Conceding the relevancy of such testimony, there is much relevant testimony that is rejected on account of undue prejudice, unfair surprise, or confusion of issues. 1 Greenl. Ev. (16th ed. by Wigmore), section 14a. The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge that may be made in the course of the introduction of the evidence." 149 Va., at page 391.

There are, however, exceptions to this rule and many cases in which evidence of other offenses has been held ad-

missible. For instance, in *Webb* v. *Commonwealth*, 154 Va. 866, 152 S. E. 366, a murder case, evidence was properly admitted to show the relations of the accused with the deceased's wife. The court there said that evidence of other offenses was admissible "whenever it becomes necessary to show the relations between the parties, their state of feelings and course of conduct towards each other, malice and intent, and possible motive which actuated the commission of the act * * *." 154 Va., at pages 872, 873. See *e.g.*, *Roy* v. *Commonwealth, supra; Faulkner* v. *South Boston*, 139 Va. 569, 123 S. E. 358; *Boyd* v. *Commonwealth*, 156 Va. 934, 157 S. E. 546. See also, Law of Ev., Va. and W. Va., (Michie, 1954), §§ 88 and 89, for an excellent discussion of the purposes for which evidence of other offenses is generally and most frequently held admissible.

The accepted rule to be derived from the cases is that evidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense similar to that charged; but if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime. *E.g., Walker* v. *Commonwealth, supra; Barber* v. *Commonwealth, supra.* See Law of Ev., Va. and W. Va., (Michie, 1954), § 88; 7 Michie's Jur., Evidence, § 48; 20 Am. Jur., Evidence, § 309; Rule 55, Uniform Rules of Ev., Nat'l Conference of Commissioners on Uniform State Laws, (1953), which may be found in the appendix of Law of Ev., Va. and W. Va., (Michie, 1954), at page 481.

In view of the principles stated, what can be said in the instant case of the testimony of Mrs. Stanford that she was reasonably sure the defendant was the man who chased her at the corner of Grace and Knight streets at 7:10 p. m., on February 1, 1954? The Commonwealth not only sought to show by the testimony of this witness that the defendant

was in the vicinity within a few minutes of the time of the alleged offenses, as it had a right to do, but it also sought to show the defendant's state of mind to molest women. In the *Barber* and *Limbaugh* cases, *supra*, evidence introduced for the purpose of showing the accused's attitude toward women was held inadmissible. The testimony of Mrs. Stanford was likewise inadmissible under the evidence here for the purpose of showing the defendant's state of mind to molest women.

Furthermore, its probative value to show that defendant was in the vicinity is doubtful. The witness was not positive in her identification of the defendant as the man who chased her; she did not see the man's features but testified that he was wearing a cap and jacket similar to that worn by the defendant at the time of his arrest. Moreover, even though it is conceded that proper testimony could be admitted for the purpose of placing the defendant in the vicinity at the time of the assaults on Della Claytor, it is clear that Mrs. Stanford's detailed testimony constituted no material link in the chain of evidence, and obviously tended to inflame the minds of the jury and prejudice them against the defendant. This testimony amounted to a distinct charge which the defendant was not required to defend and which was not intimately connected and blended with any constituent element of any of the three serious offenses for which he was on trial.

Because of the conclusion stated we find it unnecessary to discuss the sufficiency of the evidence. The judgments are reversed, the verdicts of the jury are set aside, and the cases remanded for a new trial or trials not in conflict with the views herein expressed.

*Reversed and remanded.*