Travis O. SPAULDING, Appellant,

v.

STATE of Alaska, Appellee.

No. 1258.

Supreme Court of Alaska.

Feb. 25, 1971.

David C. Backstrom, Asst. Public Defender, Fairbanks, for appellant.

Lyle R. Carlson, Asst. Dist. Atty., Fairbanks, for appellee.

Before BONEY, C. J. and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

ERWIN, Justice.

Travis O. Spaulding was convicted of assault with a dangerous weapon in connection with a shooting incident which occurred on the evening of May 4, 1969, in Fairbanks. When the events in question took place, Thomas Garrett had driven to a duplex owned by him and rented to Douglas Joslyn. When he entered Joslyn's apartment he found Travis Spaulding inside. Spaulding was apparently staying with Joslyn. Exactly what happened prior to Mr. Garrett's leaving is in dispute. Mr. Garrett stated that there was no real dispute about anything, but Mr. Spaulding testified that he questioned Mr. Garrett's presence and right to be on the premises and actually ordered him to leave.

In any event, Mr. Garrett left the premises and walked toward his car, which was parked in front of the duplex. He testified that as soon as he had rounded the front of the car he spied Mr. Spaulding, who shouted "I'm going to shoot the car." Spaulding stated that he had told Garrett on the premises that he was going out there and blow the motor out of his car,

but it is undisputed that shots were fired by appellant after Garrett had placed himself in the driver's seat and started to drive away. One shot struck the car at a point on its side just a short distance ahead of the front edge of the right front door. A second and third shot were fired, at least one of which struck a portion of the fence in line with the car as it sped away. The point of impact of the other shot does not appear in the record, although the appellant explained that he deliberately fired his second shot at the ground in order to line up for the third.

After the shooting, Mr. Garrett drove away to call the police. The appellant went back inside the apartment and then proceeded almost immediately to the other half of the duplex to call a cab. The neighbor, Maria Boyd, stated that at this time appellant came into her apartment claiming that he was "going to shoot the son-of-a-bitch." Appellant denied making this statement and stuck to his original story that he was just trying to shoot the motor out of the landlord's car. Ronald Watt, who was driving by the apartment at the time of the accident, saw the appellant shoot at Garrett's car and noted that one shot struck a fence post almost directly between Garrett and Spaulding.

After the appellant took the stand and testified in his own behalf, the state was permitted to introduce into evidence over objection by appellant a 1933 conviction in Texas for burglary, a 1935 conviction of counterfeiting 25-cent pieces, and a 1955 armed robbery conviction, all for the purpose of impeaching the credibility of the appellant.

In this appeal appellant contends that the 1955 armed robbery conviction should not have been introduced for the purpose of impeaching him for the reason that it had been reversed by the United States District Court for the District of Kansas for failure to provide counsel on appeal as required by the United States Supreme Court.[1] He further contends that the trial

---

1. See Spaulding v. Taylor, 234 F.Supp. 747, 749–750 (D.C.Kan.1964).

court abused its discretion by failing to exclude the 1933 and 1935 convictions, in that they were too remote from the offense in the present case to be admissible for impeachment purposes. As a final claim, he states there was no showing as a matter of law that appellant had any intent to assault Thomas Garrett and that therefore a judgment of acquittal should have been entered.

In the recent case of Herrin v. State,[2] we noted that where the denial of a motion for judgment of acquittal is appealed, the record must be viewed in the light most favorable to the state and a determination made whether fair-minded men in the exercise of reasonable judgment could have differed on the question of whether appellant's intent to assault Thomas Garrett had been established beyond a reasonable doubt:

> When presented with a specification of error of this nature, this court will consider 'only those facts in the record most favorable to the state and such reasonable inference as the jury may have drawn from them. * * *'

■ In the case at bar, the jury could have properly considered as bearing on the appellant's intent the fact that the victim saw the gun approximately when it was fired and that it appeared to be pointed at him as well as the vehicle. The victim noted that one shot missed him by 18 to 24 inches and a bystander, Lt. Walt, stated that as near as he could tell, the gun was lined up with the driver's seat of the vehicle. It is clear that the victim was in the car when the first shot was fired. Mrs. Boyd testified to the effect that Spaulding mentioned Garrett by name in connection with a statement that he would "shoot the son-of-a-bitch." While appellant told the jury he had no intention of harming Garrett and that he was simply going to blow the motor out of the car, all of this information created a factual issue concerning his actual intent, which was a question for the jury to determine. Under the circumstances, it was not error to submit this issue to the jury.

The 1955 conviction of Travis Spaulding was reviewed by the United States District Court for the District of Kansas on an application for Writ of Habeas Corpus; the court entered an order discharging Spaulding from custody within 30 days unless the State of Alaska provided Spaulding with a meaningful appeal as required of all states by the case of Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and its retrospective application through Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964), rev'g per curiam 192 Kan. 171, 386 P.2d 295 (1963). Both parties herein concede that nothing further was done and that Spaulding was released from prison within 30 days after the order had been entered because the State of Alaska took no action. Thus, the issue is whether the state may use that conviction to impeach the defendant in a subsequent criminal case despite the fact that it failed to provide him with counsel in order that he might exercise his right of appeal.

The starting point for discussing the effect of such a determination is the case of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), where the Supreme Court of the United States held that a conviction obtained without the appointment of counsel could not be used in a state proceeding to enhance the punishment under recidivist statutes. The court stated that to do so would be to violate the rule announced in Gideon v. Wainwright,[3] which made it unconstitutional for any state to try a person for a felony unless he had a lawyer or had validly waived his right to one:

> To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another of-

---

2. 449 P.2d 674, 675 (Alaska 1969), quoting Gargan v. State, 436 P.2d 968, 969 (Alaska 1968).

3. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

fense (citation omitted) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

389 U.S. at 115, 88 S.Ct. at 262, 19 L.Ed.2d at 324–325.

■ The denial of counsel in a criminal trial necessarily invalidates the conviction because lack of counsel so jeopardizes the fairness of the trial that any finding of guilt therein is likely to be unreliable.[4] Because of the unreliability of uncounseled convictions, their use in a subsequent criminal proceeding simply compounds the original denial of the constitutional right to counsel.

The purpose of impeachment by prior convictions is to cast doubt upon the truthfulness of the impeached witness. Evidence of such convictions is brought out in the hope that the trier of fact will infer that his testimony is unreliable because of his proven criminal character. Where the witness' is a criminal defendant, such impeachment tends to support indirectly a finding of guilty if the jurors decide that he is testifying falsely in his own defense. This conclusion of course increases the probability of his guilt. But if the impeaching evidence is unreliable, so obviously is any conclusion of untruthfulness which may be drawn therefrom. In Johnson v. State, 9 Md.App. 166, 263 A.2d 232, 238–239 (Md.Sp.App.1970), the court stated:

We hold that the *Burgett* principle serves to exclude evidence of a prior conviction offered for the purpose of impeaching the credibility of an accused testifying on his own behalf when it is established that such conviction was obtained absent representation by counsel

or valid waiver thereof. We point to the language in the opinion of the Court in *Burgett.* 'To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either *to support guilt* or to enhance punishment *for another offense* \* \* \* is to erode the principle of that case \* \* \*. The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial \* \* \*' (emphasis supplied.) 389 U.S. at 115, 88 S.Ct. at 262. We do not think that this language can be interpreted as limiting its application to recidivist, or habitual offender or subsequent offender statutes authorizing enhanced punishment upon conviction of a current substantive offense. And we cannot say that evidence of a prior conviction to impeach the credibility of an accused testifying in his own behalf does not support guilt of the offense for which he is on trial; the question of his credibility is material to his guilt or innocence.[5]

■ We therefore hold that the use of the 1955 conviction for the purpose of impeachment was improper. While the states are free to provide such procedures as they choose in criminal causes, including rules of evidence, they may not adhere to any procedure which violates any of the guarantees of the United States Constitution.

The only issue remaining is the question of whether or not the admission of the 1955 conviction was harmless error. Since the error here involves the denial of a federal constitutional right, we must be satisfied beyond a reasonable doubt that it did not contribute to the accused's conviction before we may hold it harmless. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967).

At the trial of this case, the intent with which the act was done was sharply con-

4. Stovall v. Denno, 388 U.S. 293, 297–298, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1204 (1967); Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453, 460 (1966).

5. *Accord,* Gilday v. Scafati, 428 F.2d 1027 (1st Cir. 1970); Tucker v. United States, 299 F.Supp. 1376, 1379 (N.D. Cal.1969). *See* People v. Shook, 35 Ill. 2d 597, 221 N.E.2d 290 (1966).

tested. Testimony was received from prosecution witnesses concerning appellant's acts and statements, much of which seemed to indicate an intentional assault upon Mr. Garrett. On the other hand, Spaulding himself testified that he intended to shoot the car only. Thus the defendant's credibility is absolutely crucial. If his story is true, he is not guilty; if not, his conviction is almost certain. Under such circumstances, it would appear to be unquestionable that the introduction of a conviction for armed robbery would have a substantial effect upon the jury's deliberations.[6] Therefore, we cannot say that the error was harmless.

Appellant also contends that the trial court abused its discretion by admitting the 1933 conviction for burglary and the 1935 conviction for counterfeiting, since such convictions were too remote in time from the case at bar to be usable for any purpose, citing Luck v. United States.[7]

█ We recognize the doctrine expounded in such cases as Luck v. United States, United States v. Palumbo, 401 F.2d 270, 273 (2nd Cir. 1968), Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), and United States v. Carr, 135 U.S.App.D.C. 348, 418 F.2d 1184 (1969), that

the superior court has discretion to exclude evidence of prior convictions because of remoteness and to determine at a hearing whether or not such conviction should be admitted into evidence by weighing its probative value against its prejudicial effect. The trial judge may prevent such use if he finds that a prior conviction negates credibility only slightly, but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of jurors improperly.

█ In the case at bar it is apparent as a matter of law it was an abuse of discretion to permit the introduction of a 37-year old conviction and a 35-year old conviction for the purposes of impeaching the credibility of appellant. It appears extremely unlikely that any convictions as old as these would have probative value on the question of credibility, and without question their prejudice would far outweigh their usefulness.

The judgment of conviction is hereby reversed, and the case is remanded to the superior court with instructions to grant a new trial under the conditions as expressed in this opinion.

---

6. We do not rule in this particular case upon the question of whether or not the totality of the circumstances may have made the question of guilt virtually undisputable and thus create a situation where true harmless error is an appropriate designation. *Compare* Johnson v.

State, 9 Md.App. 166, 263 A.2d 232, 243–244 (Md.Sp.App.1970) *with* Tucker v. United States, 299 F.Supp. 1376 (N.D.Cal.1969).

7. 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).