Eugene GORDON, Appellant,

v.

STATE of Alaska, Appellee.

No. 1535.

Supreme Court of Alaska.

Oct. 6, 1972.

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR, ERWIN, and BOOCHEVER, JJ.

## OPINION

BONEY, Chief Justice.

The defendant, Eugene Gordon, appeals from a conviction upon a jury verdict of rape.

The rape occurred on the evening of September 22, 1970. The victim, a young recently divorced woman who lived alone, was awakened at about 10:00 p. m. to find a man sitting on her bed. Though the apartment in which she lived was in almost total darkness, the victim identified Gordon as her assailant by his voice. When the victim awakened, her assailant covered her nose and mouth to quiet her. He then held her down by the shoulders and attempted intercourse. At one point, the victim kicked her assailant, throwing him forward so that he had to stop himself by thrusting his palms against the wall at the head of the bed. Her resistance and her crying caused her assailant to threaten either to smother her or to break her jaw if she did not quietly submit. Finally, the victim's struggles and attempts to escape were overcome and the rape occurred.

Previous to the rape, the victim's relationship with Gordon had been quite limited. Gordon had been employed to do plumbing work on the building where the victim lived. She had noticed him around

the building and had spoken to him briefly in the Candle Inn, a cocktail lounge adjacent to the building, but she had never dated him.

At trial, the state's evidence included a voice identification, Gordon's palm and finger prints from the wall at the head of the victim's bed, his probable access to a key to the victim's apartment, and testimony that Gordon had been in the Candle Inn bar on the evening of the rape.

Gordon was convicted and sentenced to ten years incarceration with the condition that he not be eligible for parole prior to serving one-third of that sentence.[1] Defendant appeals both his conviction and the sentence imposed.

### I

Gordon argues first that the trial court erred in admitting testimony to the effect that Gordon had expressed, in coarse language, that he found the victim sexually attractive.

At trial, the following testimony by Mr. Walker, a co-worker of Gordon's, was admitted over objection:

Q. During the time that you were working on these units with the defendant, did you ever hear the defendant make any remarks about the [victim]?

A. I overheard the remark one time that he would like to get into [her] pants.

Q. And did you hear any other remarks along that line? Will you strike that question. How many times did you hear him make that or similar remarks, if more than once?

A. I would say twice.

Q. All right. Did you ever have occasion to hear him make a remark that

---

1. AS 33.15.230(a)(1) provides:

Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may

(1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner is eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court . . . . .

included both [the victim] and her apartment?

A. I overheard what he said about the trapdoor that was in—that led into [her] apartment and that it'd be nice if there was another entrance left where he could—where a person could go in there.

Q. During this period did you ever hear him make similar remarks about other women?

A. No.

.    .    .    .    .    .

Q. When you stated, sir, that you overheard this remark, who actually made the remark?

A. Gene made it.

Q. To whom, sir?

A. In conversation with me.

On appeal, Gordon objects to this testimony as being irrelevant and immaterial. He further contends that if relevant its probative value was nonetheless exceeded by its prejudicial impact and so it should have been excluded.[2]

■ In order to be admissible, evidence must be both relevant and material;[3] it must be both probative of the proposition it was used to support, and supportive of an issue in the case. The remarks were material in that whether or not Gordon had a preexisting desire or intent to rape the victim was an issue in the case and in that the fact that he made the remarks would support that issue.

■ In order to be relevant, evidence must simply make a proposition more probable than it would be without the evidence.[4] The thrust of Gordon's argument is that the testimony was relevant only to show a desire to have intercourse with the victim and not to show a desire to have intercourse forcibly and against her will. Such an argument is self-defeating for the desire to have intercourse with a woman is, of necessity, included within the desire to have intercourse forcibly and against her will. Relevant evidence need only advance an inquiry.[5] While Gordon's statements that he would like to "get into" the victim's "pants" would hardly be sufficient alone to support a conviction,[6] they are relevant and material.

The statement concerning the trap door is also relevant. It further bolsters the relevance of the other remarks for it negates the notion that Gordon was contemplating a consensual relation with the victim; surreptitious entry is hardly an ingredient of a consensual affair.

We further conclude that the evidence of the remarks was not so prejudicial that their prejudicial effect outweighed their probative value. These remarks merely evidenced an intent. As such they included no admission of other crimes[7] or of sexual deviation.[8] We see nothing inflammatory in a crude reference of sexual desire made to fellow workers on a job site.[9]

2. Gordon does not object to the hearsay nature of the testimony, but rather concedes it is admissible under the state of mind exception to the hearsay rule. We see no need to consider the hearsay nature of the testimony since any objection has been waived.

3. Hartsfield v. Carolina Cas. Ins. Co., 451 P.2d 576, 578 (Alaska 1969); Mitchell v. Knight, 394 P.2d 892, 894 (Alaska 1964).

4. Mutual Ins. Co. v. Hillmon, 145 U.S. 285, 298, 12 S.Ct. 909, 913, 36 L.Ed. 706, 711 (1892), C. McCormick, The Law of Evidence § 152, at 318 (1954); James, Relevancy, Probability and the Law, 29 Calif.L.Rev. 689, 698–699 (1941).

5. C. McCormick, The Law of Evidence § 152, at 319 (1954).

6. Id. § 270, at 575–576.

7. Cf. Day v. Commonwealth, 196 Va. 907, 86 S.E.2d 23, 26–27 (1955).

8. Cf. State v. Barton, 198 Wash. 268, 88 P.2d 385, 386–389 (1939).

9. We further conclude that it hardly seems probable that a jury would convict a man of such a crime on the basis of such statements. As a result, we would here find any error harmless. Love v. State, 457 P.2d 622, 631 (Alaska 1969).

## II

Gordon next argues that the trial court abused its discretion in denying his motion for a protective order to exclude any evidence of prior convictions.

Evidence of two prior convictions was brought out at trial. One conviction was for grand theft,[10] the other for joyriding. The convictions occurred ten and eleven years, respectively, prior to Gordon's trial in the instant case.

Prior to trial Gordon sought a protective order to prevent admission of the grand theft conviction as prejudicial and remote under our decision in Spaulding v. State.[11] The trial court denied the motion:

I frankly don't feel 10 years is particularly remote. However, if this were —let's say the prior conviction had been for, say, for the deviant behavior or something of that nature, I'd feel that the prejudicial effect would outweigh its probative value and would not allow it. However, burglary, robbery, grand theft, all of these crimes bear directly, I think, on whether an individual is honest or dishonest and that's what we're looking for in this case and, as I've stated, I don't think it's particularly remote and I don't think that the jury can draw any —to be misled by that conviction into thinking that this individual is a sexual deviant and must rape people because he once did a—convicted of grand theft. I won't—I'll deny the motion.

At trial, defense counsel sought to bring out Gordon's prior grand theft conviction in apparent anticipation of the state's im-

peachment evidence. In response to defense counsel's questions regarding prior convictions, Gordon also disclosed the joyriding conviction, of which defense counsel was apparently unaware.

In *Spaulding* we held:

[T]hat the superior court has discretion to exclude evidence of prior convictions because of remoteness and to determine at a hearing whether or not such conviction should be admitted into evidence by weighing its probative value against its prejudicial effect. The trial judge may prevent such use if he finds that a prior conviction negates credibility only slightly, but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of jurors improperly.[12]

We then concluded that the trial court had abused its discretion as a matter of law in admitting for purposes of impeachment two convictions, one thirty-five and the other thirty-seven years old.[13] The cases we there relied upon do not establish the admission of ten year old convictions to be an abuse of discretion as a matter of law. From the above quoted portion of the transcript, it is apparent that the trial judge carefully exercised his discretion. He balanced the possible prejudicial effect of the grand theft conviction against its probative value. Furthermore, an instruction limiting the jury's use of prior convictions was given.[14] In such circumstances we conclude that the trial court did not abuse its discretion in denying the motion for a protective order.[15]

---

10. The grand theft conviction occurred·in California. *See* Cal. Penal Code §§ 484, 486–487, 489. The equivalent Alaska crime would be grand larceny, AS 11.20.-140.

11. 481 P.2d 389 (Alaska 1971).

12. *Id.* at 393.

13. *Id.*

14. Instruction 10 provided:
    The fact that a witness has been convicted of a crime, if such be a fact, may be considered by you for only

one purpose, namely, in judging the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness's credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness.

15. An alternative ground for concluding there was no error exists for the joyriding conviction. The motion for a protective

## III

■ Gordon also appeals from the sentence imposed. He alleges no impropriety in the sentencing procedure, but argues that, in the total circumstances of this case, the ten-year sentence was not justified by needs to rehabilitate Gordon or to protect the public.[16]

Sentencing is a discretionary function.[17] For rape, the judge may impose a sentence of from one to twenty years.[18] The broad principle of reformation encompasses multiple goals, including: rehabilitation and/or isolation of the offender, deterrence of the offender, deterrence of others, and condemnation of the individual offender as a reaffirmation of societal norms.[19]

It appears from the transcript that the sentencing judge was acutely aware of these standards. The judge was particularly concerned with the problems of protecting the public, deterring others, and reaffirming society's condemnation of forcible rape which we have held to "rank among the most serious crimes."[20] The judge stated:

[S]omething must be done to emphasize the seriousness of rape upon a woman against her will. This particularly was not a situation where the lady elected at some late stage in her seduction to say no which is often the case when rape is charged. This was a case where a lady was sleeping in her bed behind locked doors as emphasized by [the state], and she was forcibly raped against her will and the jury has said Mr. Gordon did it.

. . . Now, for a deterrent effect we must look to—I don't think I know that Mr. Gordon is going to be significantly rehabilitated by any sen—any imprisonment. If Mr. Gordon was going to be rehabilitated by this set of occurrences I believe he already would be rehabilitated. I don't think he wants to go through this again either. If in fact he is to be impressed, he will have been impressed was my point. I don't think he's impressed at all. I think it's—I disagree with counsel for the defendant that people who commit rapes once are unlikely to commit rapes again. I think more significantly we find that sexual offenders tend to be sexual offenders again as soon as possible when circumstances allow. The court in Chaney expressed its outrage that the judge gave the minimum sentence allowed by law . . . . I don't see that Chaney was all that much more outrageous than this here. . . . The jury said that Mr. [Gordon] one way or another got into her home while she slept and attacked her. I recall quite clearly her testimony as to the threats made, the actions taken to keep her from yelling and there's little question in my mind that if she struggled harder or screamed she probably would be dead at this moment, broken neck or strangled. All of these things I consider when I sentence Mr. Gordon to a period of 10 years in prison. It'll be the order of the court that he will not be eligible for parole until such time as he has served a full one-third of that sentence.

---

order mentioned only the grand theft conviction. The joyriding conviction was brought out by the defense without first giving the trial court an opportunity to rule on its admissibility. We conclude that the matter does not rise to plain error and therefore we need not consider it. Alaska R.Crim.P. 47(b); Bargas v. State, 489 P.2d 130, 133–134 (Alaska 1971); Thomas v. State, 391 P.2d 18, 20 (Alaska 1964); Bowker v. State, 373 P. 2d 500, 505 (Alaska 1962).

16. In State v. Chaney, 477 P.2d 441, 443 (Alaska 1970), this court relied upon a

constitutional mandate for the proposition that:

Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

17. Nicholas v. State, 477 P.2d 447, 448–449 (Alaska 1970); State v. Chaney, 477 P.2d 441, 443–444 (Alaska 1970).

18. AS 11.15.130(c).

19. State v. Chaney, 477 P.2d 441, 444 (Alaska 1970).

20. *Id.* at 446.

The transcript thus reveals that the judge imposed the sentence he did for the purposes of reaffirmation, deterrence, and protection. Having noted the factors relied upon by the judge, Gordon argues that rehabilitation was not a significant factor in support of the decision. Gordon's contention is true; however, the judge considered rehabilitation and determined that the likelihood of success was slight. Indeed, the sentencing judge's conclusion that reformation would prove unlikely may have been one of the primary bases for the substantial sentence imposed.

On the basis of the judge's comments, we conclude that proper factors were considered, and that the judge had a reasoned basis for the sentence imposed.

We affirm the conviction and sentence.