COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia


KEVIN A. CUNNINGHAM, S/K/A
  KEVIN ANTONIO CUNNINGHAM
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0079-11-2                        JUDGE LARRY G. ELDER
                                                    JANUARY 17, 2012
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                                   Bradley B. Cavedo, Judge

                Catherine S. Rusz (Johnson, Gaborik, Fisher-Rizk, and Rusz, PLC,
                on brief), for appellant.

                Karen Misbach, Assistant Attorney General (Kenneth T.
                Cuccinelli, II, Attorney General, on brief), for appellee.


        Kevin A. Cunningham (appellant) appeals his jury trial convictions for second-degree

murder in violation of Code § 18.2-32 and use of a firearm in the commission of that offense in

violation of Code § 18.2-53.1.[1]  On appeal, he contends the trial court erred in (1) refusing to

strike for cause a potential juror who may have formed an opinion about his guilt based on

newspaper accounts; (2) allowing the Commonwealth to impeach his character with evidence

that he had not legally purchased the firearm he used to commit the charged offenses; and

(3) refusing to give his proffered jury instructions on the right to arm in self-defense.  We hold

the trial court erred in admitting improper impeachment evidence and that this error was not

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We note the sentencing order omits the period in the code section, erroneously
indicating appellant was convicted for violating Code § 18.2-531 rather than Code § 18.2-53.1.

harmless. Thus, we reverse and remand for a new trial without reaching appellant's other assignments of error.

I.

BACKGROUND

On the evening of April 23, 2010, appellant was at a Richmond club with a group of friends. Also at the club that night were victim and a group of his friends. The two groups had an altercation, which ended when law enforcement intervened, but a second altercation occurred a few minutes later and culminated in appellant's shooting and killing victim. The Commonwealth's evidence supported a finding that appellant, who retreated to a position of safety after the first altercation, intentionally armed himself, sought the victim out, shot the victim, and then "celebrat[ed]."

Appellant testified at trial, providing a different version of the events of April 23, 2010. He contended he tried to avoid the initial dispute but that victim and his ten to fifteen companions punched and kicked him without provocation for several minutes. Appellant said that when police broke up the fight, he was "[w]oozy," "dizzy," and bleeding, that his body was hurting, and that he was "scared" because he "didn't know how much people [sic] exactly was with this group" and he was afraid he might get hit again.

Appellant testified he left the front of the club as quickly as possible and that he and one of his companions, Fleming, who had also been beaten, went to Fleming's car. When appellant heard Fleming receive a phone call, he was reminded that a woman who had come to the club with them "was either still getting beat up or [had] just [been] left back [at the club]." Both appellant and Fleming were concerned about her. As Fleming started running back toward the club, appellant reached into the car and retrieved his gun, which he had earlier stowed beneath

the passenger seat.  He said based on the beating he had just received, he was afraid it would happen again and that he retrieved the gun "because [he] had to protect [himself]."

Appellant testified that when he and Fleming reached the woman and a male companion, the foursome turned to leave, but victim and about twenty other people ran toward them. Appellant said victim slid to the front of the group, looked at appellant, and raised his left hand behind him.  As victim "came in to swing at [appellant]," appellant "panicked," "jumped back," "reached in [his] pocket and just shot."  Appellant said he fired once and that when he "[saw] the bullet engage through [victim's] chest," "[he] knew it was [his] chance to run and [he] just ran" and "kept running."  Appellant testified that before he fired, he was afraid victim and the large group of his companions "[were] going to beat us to death. . . .  I was scared as hell because there was nobody to break it up this time[, and] [t]hey had a lot more people."

During the Commonwealth's cross-examination of appellant, the following exchange took place:

> Q.  Now, you didn't have a permit for that weapon, did you, [appellant]?
>
> A.  No, ma'am.
>
> Q.  You did not purchase that weapon legally, did you?
>
> A.  No, ma'am.
>
> [APPELLANT'S COUNSEL]:  Objection.  What is the relevance of this?
>
> THE COURT:  What is the relevance?
>
> [PROSECUTOR]:  The relevance is the character of [appellant].
>
> [APPELLANT'S COUNSEL]:  It's not proper character impeachment, Judge.  It is irrelevant.
>
> [PROSECUTOR]:  He's breaking the law, he just hasn't been caught.  I think that's appropriate for the jury to hear.

THE COURT: Overruled.

[PROSECUTOR]: Thank you.

Q.    You did not purchase that firearm through legal means, did you?

A.    No.

The trial court instructed the jury on first- and second-degree murder, voluntary manslaughter, and self-defense. In closing argument, the Commonwealth reminded the jury that in order to find appellant acted in self-defense, it had to "accept what he [testified] to . . . completely." The Commonwealth emphasized appellant's admission on cross-examination that he purchased the firearm illegally and did not have a permit for it as a basis for the jury to reject what "[appellant] wants you to believe."[2] The jury found appellant guilty of second-degree

---

[2] The relevant portion of the Commonwealth's closing argument was as follows:

> [F]or you to believe that this is self-defense, for you to believe that this is manslaughter, something done in the heat of passion, you have to wholly believe what [appellant] said to you. . . .
>
> Well, let's think about what we know about [appellant]. [Appellant] told you that he purchased an *illegal* firearm somewhere. [Appellant] told you it was an *illegal* weapon, *told you he didn't have a permit for it*. And he told you that, you know, on his way downtown going to the club he decided to take it with him.
>
> Now, I say to you, ladies and gentlemen, is it common for a person to accessorize themselves with a nine-millimeter firearm when they're going out to the club to have a good time. That tells you a little something about the person who sat on the witness stand today.
>
> \*     \*     \*     \*     \*     \*     \*
>
> No one is threatening [appellant] at the car. He says he thinks they're probably going to go home but for the phone call [from their friend who is still at the scene of the fight]. But what does [appellant] do, he grabs his *illegal* firearm sitting on the floor in

murder and use of a firearm in the commission of murder.  After sentencing, appellant noted this appeal.

## II.

## ANALYSIS:  IMPEACHMENT OF APPELLANT

Under settled principles, "[w]hen an accused testifies in his own defense, his credibility, like that of any . . . witness, may be attacked in two ways[:] . . . [by] show[ing] that his general reputation for truth and veracity is bad or that he has been convicted of a felony or of a misdemeanor involving moral turpitude." Land v. Commonwealth, 211 Va. 223, 226, 176 S.E.2d 586, 588 (1970).  "'[E]vidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused [for a trait other than veracity] or his disposition to commit an offense similar to that charged.'" Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962) (quoting Day v. Commonwealth, 196 Va. 907, 914, 86 S.E.2d 23, 26 (1955)).  However, "'if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise

---

the back seat.  He arms himself when he is not under the threat of serious bodily harm.

\*     \*     \*     \*     \*     \*     \*

[Y]ou know from the evidence that [appellant] cooled down at least for five to seven minutes.

\*     \*     \*     \*     \*     \*     \*

And what did his cool thought tell him to do[?]  . . . [Appellant's] cool mind told him to get my *illegal* gun out of the car and let me take it down there.

(Emphases added).

- 5 -

admissible, it will not be excluded merely because it also shows him to have been guilty of another crime.'"[3] Id. (quoting Day, 196 Va. at 914, 86 S.E.2d at 26).

Here, at trial, the only basis the Commonwealth proffered to support the admissibility of evidence that appellant's possession of the firearm was illegal was that it showed his "[poor] character." Although evidence that appellant *possessed and used* the weapon was relevant to the issue of appellant's guilt for the charged offenses, whether that possession was *legal or illegal* was not relevant to an element of the charged offenses or to appellant's credibility as a witness. Manifestly, the evidence that appellant possessed the firearm illegally was inadmissible as character evidence. Indeed, the Commonwealth, on appeal, does not dispute appellant's claim that the trial court erred in allowing the Commonwealth to impeach appellant's credibility with evidence that he obtained the firearm illegally. Thus, we hold that the trial court's overruling of appellant's objection on this issue was error.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

---

[3] Potentially relevant facts that such evidence may be admissible to prove include "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or . . . common scheme or plan." Va. Bar Ass'n Boyd-Graves Conf., A Guide to Evidence in Virginia § 404(b) & nn., at 28-31 (2011). Neither the Commonwealth's attorney, at trial, nor the Attorney General, on appeal, argued that the challenged evidence was admissible under any of these exceptions to the general rule prohibiting character evidence.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566 (1946)); see also Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (discussing harmless error analysis prior to the Supreme Court's adoption of the Kotteakos test in Clay).

"If other evidence of guilt is so overwhelming and the error insignificant, by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict, the error is harmless." Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011); see also Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005). The erroneous admission of evidence also is harmless if "the evidence admitted in error is merely 'cumulative' of other, undisputed evidence." Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) (quoting Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353, 373-74 (1993)).

However, even if "other evidence amply supports the jury's verdicts, [the error is not harmless when] the disputed testimony may well have affected the jury's decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). "'[H]armless error analysis . . . [is not] simply a sufficiency of the evidence analysis.'" Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (en banc) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992)). We may uphold a decision on the ground that any error involved is harmless only if we can conclude, without usurping the trial court's fact-finding function, "'that the error did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566); see Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911 (noting a court may not declare an error harmless if doing so requires "usurping the [fact finder's] function").

The error here was not harmless. In addition to improperly eliciting from appellant testimony that he did not obtain the firearm legally, the Commonwealth emphasized that illegal possession in closing and expressly tied appellant's possession of that illegal firearm to its argument that his testimony was not credible. Appellant's credibility was key to his defense: If the jury had believed appellant's account of the events, it could have concluded he acted without malice such that he was guilty of no more than voluntary manslaughter. Cf. Jones v. Commonwealth, 50 Va. App. 437, 453, 650 S.E.2d 859, 867 (2007) (holding erroneous exclusion of testimony that could have rehabilitated the defendant's credibility was not harmless because the jury, which convicted the defendant of a lesser-included offense, "[might] have . . . exonerated [him] if [it had] found his testimony was entirely credible"); Crumpton v. Commonwealth, 9 Va. App. 131, 138, 384 S.E.2d 339, 343 (1989) (holding erroneous limitation of some of the defendant's testimony seeking to explain his prior inconsistent statements was not harmless). Thus, we are unable to conclude, without usurping the jury's fact-finding function, that the error in admitting the challenged impeachment testimony "did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

III.

For these reasons, we hold the trial court erred in admitting improper impeachment evidence and that this error was not harmless because the jury's assessment of appellant's credibility was critical to his defense. Thus, we reverse and remand for a new trial.

Reversed and remanded.