# Richmond

## David E. Whitbeck v. Commonwealth of Virginia.

December 1, 1969.

Record No. 7165.

Present, All the Justices.

*C. Daniel Stevens* (*Richard H. C. Taylor*, on brief), for plaintiff in error.

*William P. Bagwell, Jr., Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

Carrico, J., delivered the opinion of the court.

The sole question presented by this criminal appeal is whether the evidence is sufficient to sustain the trial court's judgment of conviction.

David E. Whitbeck, the defendant, was indicted for statutory burglary. He was tried by the court without a jury, was found guilty, and was sentenced to serve five years in the penitentiary. He was granted a writ of error.

The evidence shows that Ronald Thomas, Stephen Van Dyke, and the defendant met at a bar in Johnstown, New York, on the evening of July 22, 1967. They decided to travel to Virginia to visit relatives of Thomas who lived in Richmond,

The trio left Johnstown in Van Dyke's automobile at approximately 11:45 p.m. on July 22. While passing through Middleburg, New York, Thomas and Van Dyke "went into" a restaurant and took "$20.00 and some cigarettes." The defendant stayed in the car.

The men never reached Richmond because Thomas "changed his mind about going there." Instead, they turned at Bowling Green, north of Richmond, and traveled across Virginia to Harrisonburg where they were arrested at 5:30 a.m. on July 24. They were later charged with a series of burglaries committed during the course of their trip.

One of the Virginia charges involved a burglary at Montpelier Amoco Service in Hanover County, the subject of the present appeal. The owner of the business closed and locked his service station at 9:20 on the night of July 23.

Thomas, Van Dyke, and the defendant arrived at the station around midnight and parked about 30 feet from the building. The defendant remained in the car. Thomas and Van Dyke broke into the service station by removing the "hasp on the front door." They entered the building, stayed about 15 minutes, and returned with "two boxes" which they placed on the front floorboard of the automobile.

When the vehicle was searched after the defendant and his companions were arrested at Harrisonburg, a crowbar and screwdriver were found in the front of the car. Also in the automobile was property taken in the series of burglaries, including "two boxes" from Montpelier Amoco Service which were found to contain "four rolls of pennies," empty coin wrappers, and rolls of electrical tape. A ham, stolen from a restaurant in King George County, was found partly consumed on the back seat.

The defendant was searched when he was arrested and was found to have $7.79 on his person, made up of $2.00 in bills and the rest in coins. The defendant insisted at trial, however, that he had four one-dollar bills when he left New York and had the same bills when he was searched. Thomas was found to have $22.10 and Van Dyke $55.25, again mostly in coins.

The defendant gave a statement to police officers when he was arrested. According to his statement, he was asleep on the back seat of the vehicle when it arrived at Montpelier Amoco Service. Thomas and Van Dyke "woke him up" and told him "they were going to do something." He "knew what was going on, but he didn't care to help." He told his associates he could not "afford to get in anymore

trouble" because, as he later explained to the police, he was "on probation . . . from New York State." When asked by the police "if he was keeping watch," he replied in the negative.

The defendant testified in his own behalf at trial. According to his testimony, he was asleep on the back seat of the car "most of the trip" from the time he left New York until he was arrested in Virginia. He never left the vehicle and he had nothing to eat or drink in the near 30-hour period he was in the automobile. He even denied partaking of the stolen ham. He awoke when his companions left the vehicle at Montpelier Amoco Service and thought they "were going to get a soda." He did not "ask any questions about what they were going to do." He "laid back down," later "looked out and saw them in the place . . . going through things," and "knew what they were doing." He saw them return with "two boxes" which they placed "in the front seat, on the floor."

The defendant relies upon the principle, set forth in our decisions, that the mere presence of a party when a crime is committed is not sufficient to render him guilty. *Jones* v. *Commonwealth*, 208 Va. 370, 373, 157 S.E. 2d 907, 909 (1967); *Smith* v. *Commonwealth*, 185 Va. 800, 819, 40 S.E. 2d 273, 282 (1946).

However, if a person is present at the commission of a crime inciting, encouraging, advising, or assisting the act done, he is deemed to be an aider and abettor and is liable as principal. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1015, 121 S.E. 2d 452, 457 (1961); *Spradlin* v. *Commonwealth*, 195 Va. 523, 527, 79 S.E. 2d 443, 445 (1954).

Here, the trial court found that the defendant was "present lending encouragement" when Thomas and Van Dyke broke and entered Montpelier Amoco Service. The court concluded, therefore, that the defendant was "aiding and abetting" the commission of the crime. The finding and conclusion are supported by the evidence.

Under the evidence, the trial court was justified in finding that Thomas, Van Dyke, and the defendant were on a planned crime swing through Virginia, burglarzing places of business as they went. The further finding was warranted that the criminal plan was carried out at Montpelier Amoco Service, with the defendant acting as lookout while his confederates entered the place.

The burglary was conclusively proved. The three men were placed together at the scene of the crime. They were found in possession of tools ordinarily used to accomplish such an offense. They also had in their possession the fruits of the undertaking. The explanation by the

defendant of his pretended innocent presence at the scene and of his alleged detachment from the burglarious plan was, as termed by the trial court, a "fantastic story."

The judgment of conviction is affirmed.

*Affirmed.*