## Richmond

GEORGE GRANT, SR. v. COMMONWEALTH OF VIRGINIA.

September 5, 1975.

Record No. 741217.

Present, All the Justices.

*Donald G. Wise,* for plaintiff in error.

*Alan Katz, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Per Curiam.

The defendant, George Grant, Sr., was convicted by the trial court, sitting without a jury, of robbery. His punishment was fixed at 10 years in the penitentiary. On appeal, the sole question is whether the evidence is sufficient to sustain the conviction.

The record shows that on March 29, 1974, the defendant borrowed from Patricia Hurdle, his "girlfriend," her 1973 Chevrolet automobile. Driving the automobile, the defendant left the Hurdle home in the City of Portsmouth at approximately 6:20 a.m. At the time, Mrs. Hurdle's .22 caliber revolver was in the glove compartment of the vehicle, a fact known by the defendant.

At approximately 8:25 a.m. that same morning, Frank M. Anderson, general manager of Alpha Rent-A-Car, located on Tidewater Drive in the City of Norfolk, was robbed in his place of business of $200

cash. Anderson's assailants were two men, Richard Hurdle, son of Patricia Hurdle, and Henry Battle. During the robbery, one of the robbers wielded an automatic pistol and the other a revolver. Thirty seconds after the robbers had fled on foot, Anderson reported the incident to the police.

At 8:30 a.m., Officer Ferebee of the Norfolk Police Department was patrolling in his police car when he received a radio message to proceed to court to appear as a witness in pending cases. "[A]t the same time," Ferebee was advised that "there had been a robbery at Alpha Rent-A-Car on Tidewater Drive." About two minutes later, Ferebee's lieutenant "came over the air" with a report that "there was an auto acting suspicious coming down East Little Creek Road." At that time, Ferebee was westbound on Little Creek Road, east of its intersection with Tidewater Drive. He observed a car "that fit the description . . . headed east on East Little Creek Road." He "made a U-turn . . . pulled in behind the [car], checked it out," and stopped it.

Two occupants, who turned out to be Hurdle and Battle, alighted from the stopped vehicle and approached the police car. The driver of the stopped vehicle, who turned out to be the defendant, "glanced back" at Ferebee and then "sped away at a high rate of speed." Ferebee immediately "started a high-speed chase after [the defendant]."

Ferebee pursued the defendant eastwardly on Little Creek Road. At the Walters Drive intersection, the defendant "slammed on brakes, pulled off to the side of the road . . . jumped out of the car and started running across" a field. Attempting to "cut off" the escape, Ferebee turned his vehicle onto Walters Drive. The defendant then "turned around and ran back to his car, jumped in," and sped away.

As the defendant "pulled out" into the highway, he "spun dirt all over" the automobile of another motorist, James Tucker. Feeling "peeved," Tucker pursued the offending vehicle until it stopped for a traffic light. At that point, Tucker observed the defendant drive onto the shoulder, get out of his car, and "run down an embankment and across the street" into an apartment complex. Tucker saw the defendant "talking to another man for a very few seconds," and then "they got into a blue Volkswagen and left."

Tucker noted the license number of the Volkswagen and gave it to Officer Ferebee, who had arrived at the defendant's abandoned automobile. Through the license number, Marcus Jeter was determined

to have been the driver of the Volkswagen in which the defendant had departed.

Jeter, a member of the Navy, had left his home in the apartment complex to "cash [his] check." As he was walking to his car, the defendant approached, said "he needed a ride . . . downtown," and offered $10 for the trip. Jeter agreed, and the two departed. Enroute, the defendant stated that "he had shot a white man" and asked if Jeter was nervous. Jeter was indeed nervous, and when the defendant asked to be driven to Portsmouth, Jeter complied. At the defendant's direction, Jeter drove to a hospital in Portsmouth, where the defendant said his "wife worked." Upon alighting from the car, the defendant gave Jeter "a $20 bill" for the ride.

It was Patricia Hurdle, owner of the vehicle the defendant had abandoned and mother of one of the robbers, whom the defendant sought at the Portsmouth hospital, where she was employed. He saw her "going down the hall" and called to her. He delivered to her the keys to her automobile and the .22 caliber revolver that had been in the glove compartment of the vehicle. The defendant told Mrs. Hurdle that he "had did something" and that "the police [had her] car." He asked her to report falsely to the police concerning his possession of the vehicle.

The defendant was arrested for the robbery on April 23, 1974. Following his arrest, he admitted to the police that he knew the robbers, Richard Hurdle and Henry Battle, "real well." He denied, however, that he had been in the City of Norfolk on the day of the robbery, that he had borrowed Mrs. Hurdle's car on that date, and that he had secured "a ride to Portsmouth from Mr. Jeter."

The defendant contends that because there was no evidence that anyone other than the "principals," Hurdle and Battle, "was in any way involved" in the robbery, the evidence was insufficient to sustain his conviction. Under Code § 18.1-11, however, in the case of a felony, every principal in the second degree may be indicted, tried, convicted, and punished as if a principal in the first degree. A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, *or* keeping watch or guard at some convenient distance. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1015, 121 S.E.2d 452, 457 (1961).

While there is no direct evidence that the defendant was present at the scene of the robbery and actively participating in the crime, the circumstantial evidence points unerringly to his guilt as an aider and

abettor of the offense. We believe the evidence permits the reasonable inference that, while the robbery was in progress, the defendant, at some convenient distance from the scene, was serving as a lookout, waiting to aid the robbers in their escape. The evidence permits the further inference that, following the robbery, the defendant acted as the driver of the "getaway" car in the abortive escape attempt. Accordingly, he was properly convicted as a principal in the second degree. *Whitbeck* v. *Commonwealth*, 210 Va. 324, 170 S.E.2d 776 (1969).

*Affirmed.*