## Richmond

### NANCY LOUISE HAGY

### v.

### COMMONWEALTH OF VIRGINIA

October 16, 1981.

Record No. 801398.

Present: All the Justices.

*William E. Bobbitt, Jr.,* for appellant.
*Alexander E. Conlyn, Assistant Attorney General (Marshall Coleman, Attorney General; Vera S. Warthen, Assistant Attorney General,* on brief), for appellee.

PER CURIAM.

Nancy Louise Hagy was indicted for the murder of Shantae Henderson, a twenty-two-month-old child entrusted to her care. Defendant was convicted by a jury of involuntary manslaughter and was sentenced to imprisonment for four years. In this appeal, Hagy contends the trial court erred in (a) permitting evidence of her alleged mistreatment of children other than Shantae, (b) permitting a five-year-old child to testify, and (c) permitting the Commonwealth to introduce into evidence a tape of her extra-judicial statement.

Mrs. Avis Henderson, Shantae's mother, testified that she first employed Hagy as Shantae's baby-sitter in November 1978. Hagy usually attended the child for approximately eight hours a day. In September 1979, after Shantae had spent her usual hours with Hagy, Mr. Henderson discovered that the child had sustained a broken arm. Neither parent knew when or how the break occurred nor was suspicious of anybody at that time. In fact, Mrs. Henderson testified that "in getting Shantae ready [that morning] I may have twisted it." She also speculated that the child's arm may have been caught in a car seat when she was "fastened in" that morning.

According to Mrs. Henderson, Shantae was given laboratory tests at King's Daughters' Hospital on the day she died, January 15, 1980. Blood tests taken at that time revealed no internal bleeding. Due to these tests, the child did not arrive at the Hagy residence until around 10:15 a.m. The mother denied hurting or hitting her daughter that day.

Numerous witnesses testified about the events occurring at Hagy's house on January 15, 1980, between 10:15 a.m. and the time Shantae was admitted to the hospital. The record reveals that only Hagy and her four-year-old granddaughter, Tanya Carroll, were present when Shantae arrived. At that time Hagy observed nothing unusual about Shantae. For no apparent reason, "around eleven" Shantae fell to the floor. After being helped up, she sat in a chair and "[s]tarted falling asleep." When Hagy changed the child's diaper about 11:30 a.m., she noticed a dark sticky stool. Shantae "hollered" while being changed. Shortly thereafter, Hagy, Shantae, and Tanya walked two blocks to Hagy's mother's home. According to Hagy, Shantae "hollered" as if she were in discomfort as she walked. Mrs. Hagy's mother noticed during the visit that Shantae did not seem to feel well. Hagy's daughter, Becky, testified that Shantae "hollered" upon her return from the walk.

Later that afternoon, Shantae fell off a swing in Hagy's backyard and hurt her head. About 1:15 p.m., Hagy's older daughter, Diana Carroll, visited for approximately forty-five minutes and left with Tanya and Becky. Hagy noticed Shantae lying on the floor in a peculiar position after Diana left with the children. Shantae refused to eat her lunch before taking an afternoon nap. Hagy attempted to give Shantae some medicine "around" 3:00 p.m., but the child refused to take it. She eventually "got a little bit in [Shantae]" and took the child to a second-floor bathroom to change her diaper. As defendant washed out a soiled diaper, Shantae left the bathroom and fell down the stairs to the first floor. Realizing that "something was wrong," Hagy had a neighbor summon an ambulance. Shantae was transported to King's Daughters' Hospital and later transferred to the University of Virginia Hospital, where she died that night.

Dr. Benjamin Sturgill, a pathologist, performed an autopsy on Shantae and stated that the cause of death was hemorrhage resulting from a ruptured duodenum.[1] He was of opinion that the child sustained the injury less than twelve hours before death. Dr. Marcello Fierro opined that the rupture of the duodenum was caused by "point pressure, blunt force, to the mid-portion of the abdomen." Two round bruises found on Shantae's abdomen aligned with the area of hemorrhage. Dr. Fierro said the injury

---

[1] The duodenum is a part of the small intestine just beyond the stomach.

would be consistent with a blow or blows to the abdomen by "[t]he rounded end of a regular, traditional, wooden . . . broomstick." She agreed that if somebody "poked" a baby in the stomach hard enough, it would cause the precise injury sustained by the deceased child. It was the doctor's opinion that the injury Shantae suffered was "not consistent with the history that was given as to how she received this injury," and that Shantae was injured before the 3:00 p.m. fall down the stairs.

Neither Hagy nor any of the other witnesses testifying about the events of January 15 said they had any knowledge of how or when Shantae was injured. Hagy emphatically denied she had struck or injured the child. She had no explanation of how or from whom the child sustained the fatal injury.

The dispositive issue in this case is whether the trial court erred in permitting, over defendant's objection, certain testimony by Nicole Evans and her mother, Mrs. Valerie Evans. In the challenged testimony, Nicole, a five-year-old child, stated that Hagy had twisted her arm and feet. Additionally, Mrs. Evans said that on one occasion her infant child, Kelly, developed a swollen leg and redness under her eye while being kept by Hagy.

■ The principles which control our decision here are well established and were reiterated in *Kirkpatrick v. Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), where we said:

> The general rule is well established that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. It is also well established that evidence of other offenses should be excluded if offered merely for the purpose of showing that the accused was likely to commit the crime charged in the indictment. However, the exceptions to the general rule are equally as well established. Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the of-

fense for which the accused is on trial. Also, testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part. Frequently it is impossible to give a connected statement showing the crime charged without incidental reference to such contemporaneous and similar crimes and where there is only such incidental disclosure of other offenses.

*Accord, John Marshall Brown, Jr.* v. *Commonwealth,* 222 Va. 572, 282 S.E.2d 18 (1981); *Brooks* v. *Commonwealth,* 220 Va. 405, 258 S.E.2d 504 (1979).

And in *Moore* v. *Commonwealth,* 222 Va. 72, 278 S.E.2d 822 (1981), we again stated the general rule that evidence of other offenses is not admissible to prove guilt of the crime for which the accused is on trial and cited *Cumbee* v. *Commonwealth,* 219 Va. 1132, 1137-38, 254 S.E.2d 112, 116 (1979), and *Eccles* v. *Commonwealth,* 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973). In *Moore,* we noted the exceptions to this rule and approved the introduction of evidence of a subsequent offense committed by the accused upon the ground that it showed his conduct and attitude toward the victim.[2]

The Commonwealth agrees that evidence of other offenses or acts is not admissible to prove that the accused is a "bad person" and therefore likely to have committed the crime alleged. In support of its position that the challenged testimony was admissible, the Commonwealth cites *United States* v. *Woods,* 484 F.2d 127 (1973), *cert. denied,* 415 U.S. 979 (1974). There, the court upheld a first degree murder conviction of the defendant for the death of her eight-month-old foster son, who allegedly died from smothering. The court, with Judge Widener dissenting, held that evidence that nine other children in defendant's care had died from or suffered episodes of cyanosis was admissible. Thereafter, in *United States* v. *Masters,* 622 F.2d 83, 85-86 (1980), the Fourth Circuit again considered the federal rule regarding the admission of evidence of other crimes and said:

The Federal Rule, both prior to and as stated in Rule 404(b), Federal Rules of Evidence - characterized as the "inclusive rule," - "admits all evidence of other crimes [or acts]

---

[2] Moore was indicted for sex offenses occurring on June 24, 1978. We allowed testimony regarding another such incident occurring in September 1978.

relevant to an issue in a trial except that which tends to prove only criminal disposition." This was the view taken of the Rule by us in *United States* v. *Woods* . . . . Manifestly the Rule, even though correctly described as "inclusionary," does not permit the automatic admission of any evidence of other "crimes, wrongs or acts." The evidence of other crimes must be relevant for a purpose other than showing the character or disposition of the defendant. (footnote omitted)

The testimony of Nicole and her mother did not show, or tend to show, the conduct and feeling of Hagy toward Shantae, and it proved no relevant element of the offense charged. Further, it did not show motive, intent, or knowledge, or any plan or scheme which led up to the homicide. The injury causing Shantae's death was totally unrelated to the types of injuries allegedly sustained by Nicole and Kelly Evans. The prosecution, through this testimony, showed only the alleged injuries sustained by Nicole and Kelly Evans. This evidence could have had only one purpose, to show that defendant was disposed toward abusing children and therefore was likely to have caused the injuries resulting in Shantae's death. The testimony given concerning the alleged injuries to the Evans children was therefore inadmissible under both the rule enunciated in *Woods* and the test long used by the Virginia courts and was prejudicial to the defendant.

Having concluded that the testimony given by Nicole was inadmissible, it is unnecessary for us to consider defendant's assignment of error which questions the child's competency to testify.

■ The remaining assignment of error relates to the admission into evidence, over Hagy's objection, of a tape recording of an extra-judicial statement made by her. On January 17, 1980, Hagy was interviewed by an insurance company claims manager. This interview concerned Shantae's death and apparently was a routine investigation conducted in connection with the civil aspects of the case. During the course of the interview, defendant answered questions about her relationship with Shantae and the events transpiring on the day the child died. At no point did Hagy admit any responsibility for Shantae's death or make any statement that could be construed as a confession. The statement was not inculpatory and was completely consistent with testimony given by Hagy in her own behalf. Assuming, but not deciding, that the

statement was inadmissible, we hold that its admission constituted harmless error.

We set aside the verdict, reverse the judgment, and remand the case for such further proceedings as the Commonwealth may consider proper.

*Reversed and remanded.*