COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


NORMAN JOSEPH TAYLOR

MEMORANDUM OPINION[*] BY
v.    Record No. 2367-02-1        JUDGE ROBERT P. FRANK
                                  JUNE 24, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

A. Theresa Bliss for appellant.

Richard B. Smith, Senior Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


Norman Joseph Taylor (appellant) was convicted in a bench

trial of grand larceny, in violation of Code § 18.2-95. On

appeal, he contends the trial court erred in finding the evidence

was sufficient. Specifically, he maintains the evidence only

proved he was physically present during the larceny. For the

reasons stated herein, we affirm the conviction.

BACKGROUND

Gerald Alms and George Tripp went fishing under the Cockle

Creek Bridge. They parked Alms's Suburban near the bridge, took

their gear, and proceeded to the water. After some time, Alms

heard another vehicle on the bridge. He then heard what he

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

recognized as his car door shutting, so he went to the top of the bridge to "check it out."

"When [Alms] got to the top and looked over the guard rail, [he] could see a man in the back of [his] pickup grabbing stuff." A second vehicle was parked five feet from his Suburban.  Alms walked towards the back of his truck.

The man who had been rummaging in Alms's vehicle, identified at trial as Robert Cherrix, got into the other car's front passenger seat and locked the door.  Another man, Sammy Cherrix, was passed out in the backseat.  Appellant was driving the car.

Alms approached the other car and saw his toolbox, jigsaw and hydraulic ram inside.  His toolbox and hydraulic unit "[were] in between the driver and the passenger."  "The jigsaw was on the passenger's side front on the floor board and the cord was hanging out the door."

Alms told the two men that he "wanted [his] tools back . . . ."  In response, "[t]hey just kind of snickered and smiled at each other.  They wouldn't look at [Alms].  They just kept looking forward out the windshield."

To prevent the vehicle from leaving, Alms "popped" two tires with his knife.  The men in the car continued "snickering."  Alms yelled at them and smashed the car's windshield with the back of his knife.  At this point, Cherrix "rolled down the window about six inches and handed back the hydraulic sleeve and the green toolbox."  Alms told them they had to open the door so he could

-

get the jigsaw, as its cord was stuck.  When Cherrix did so, Alms "stuck the knife in there."  Cherrix "put his arms up and [Alms] got [his] saw back and [Cherrix] gets cut."  Appellant then drove off toward Queens Creek Bridge.

Chincoteague Police Officer Gary Fox was called to the Queens Sound Bridge, where he found appellant and Cherrix with an ambulance crew.  Cherrix had a cut on his right arm.  He told Fox that "he fell on the shells on Queens Sound Bridge."[1]  When Officer Fox asked appellant what had happened, appellant "said that they had stopped there at Cockle Creek to help somebody and the man went ballistic and cut both tires and knocked the windshield out and cut Bobby."  Both Cherrix and appellant were intoxicated.  Appellant said nothing to Officer Fox about a theft.

At trial, Cherrix admitted he took a circular saw and either a grinder or sander from Alms's Suburban, yet he denied taking the toolbox.  Other than this inconsistency, Cherrix confirmed Alms's version of the events.  According to Cherrix, he and appellant did not discuss stealing the property.  He claimed not to know why he did it, other than that he was drunk.

Appellant, a convicted felon, denied any prior knowledge of the larceny.  He testified he did see Cherrix take some items from the Suburban.  He claimed he "hollered, 'Put it back.'"  He

---

[1] Cherrix, a convicted felon, denied making this statement to the officer.

-

then saw Alms "come around."  Appellant testified Cherrix handed the items to Alms before returning to the car.  He also claimed Cherrix asked him to stop the car on the bridge to see if anyone in the truck needed help.

On cross-examination, appellant reiterated, "I never got of the car.  Had no idea what was going on."  However, he admitted turning off the motor "as soon as I got out."  Appellant also claimed he "never laugh[ed] at nobody.  Mr. Alms is not telling the truth if he says I laughed or snickered."  He also claimed Alms lied when he said his property was in appellant's car, next to appellant.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence, maintaining no evidence indicated appellant participated in the theft.  The trial court denied the motion.  Upon the conclusion of appellant's case, appellant renewed his motion to strike.  Again, the trial court denied the motion.

## ANALYSIS

Appellant contends the evidence only reveals he was present during Cherrix's theft of Alms's property, not that he participated in the theft.  He argues no evidence indicated that he had prior knowledge of Cherrix's larcenous intent or that he had any intent to take Alms's property.

> Under familiar principles of appellate
> review, we examine the evidence in the light
> most favorable to the Commonwealth.  See

-

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

A principal in the second degree is one who is not only present at a crime's commission, but one who also commits some overt act, such as inciting, encouraging, advising, or assisting in the commission of the crime or shares the perpetrator's criminal intent. Murray v. Commonwealth, 210 Va. 282, 170 S.E.2d 3 (1969); Triplett v. Commonwealth, 141 Va. 577, 127 S.E. 486 (1925); W. LaFave & A. Scott, Handbook on Criminal Law 497 (1972). Mere presence during the commission of a crime and subsequent flight do not constitute sufficient evidence to convict a

-

person as a principal in the second degree. Grant v. Commonwealth, 216 Va. 166, 217 S.E.2d 806 (1975); Whitbeck v. Commonwealth, 210 Va. 324, 170 S.E.2d 776 (1969).

Moehring v. Commonwealth, 223 Va. 564, 567, 290 S.E.2d 891, 892 (1982).

> "Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal."

Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942) (citing James v. Commonwealth, 178 Va. 28, 33, 16 S.E.2d 296, 298 (1941)).

> The rule has been generally adopted: "Notwithstanding these rules as to the nonliability of a passive spectator, it is certain that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same." 1 R.C.L. 141. Cases cited from other States.

Id. at 100, 18 S.E.2d at 316.

The issue here is whether appellant aided Cherrix in the theft or intended to deprive Alms of his property. The evidence revealed that appellant was more than a "passive bystander." Appellant snickered and smiled at Cherrix while ignoring Alms's demands for his property. This behavior could allow the fact

-

finder to conclude that appellant countenanced and encouraged Cherrix's theft.

Additionally, the stolen property was seen in appellant's car with appellant immediately following the theft. Alms testified he saw his tools in appellant's car. A presumption of theft arises from the recent, unexplained, exclusive possession of recently-stolen property, though such possession may be joint. Castle v. Commonwealth, 196 Va. 222, 226-27, 83 S.E.2d 360, 363 (1954). Although appellant claimed he was never in possession of the items, the fact finder could have concluded he did possess them. First, appellant lied to the officers and at trial to conceal his involvement. See Dunbar v. Commonwealth, 29 Va. App. 387, 394, 512 S.E.2d 823, 827 (1999). Second, at least one of the items was on the seat beside appellant, within his reach and in plain view, placed in his car after he saw Cherrix steal it from the truck. See Albert v. Commonwealth, 2 Va. App. 734, 741-42, 347 S.E.2d 534, 538-39 (1986) (finding a defendant consciously exercised dominion and control over drugs found in a briefcase near his bed that contained his identification). The trial court was not obligated to accept appellant's testimony that he was not in exclusive possession with Cherrix of the recently-stolen goods. The fact finder could apply the presumption of theft in this case to conclude appellant was a principal in the second degree.

The evidence supports the trial court's finding that appellant was a principal in the second degree.  We affirm his conviction.

Affirmed.