COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


SAMANTHA LEIGH THOMAS

                                                    MEMORANDUM OPINION* BY
v.      Record No. 2765-04-2          JUDGE ELIZABETH A. McCLANAHAN
                                                    FEBRUARY 28, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
F. Ward Harkrader, Jr., Judge Designate

Adam C. Rhea for appellant.

Karri B. Atwood, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Samantha Leigh Thomas was convicted in a bench trial of statutory burglary in violation

of Code § 18.2-91, as a principal in the second degree.  On appeal, Thomas contends that the trial

court erred by:  (1) failing to exclude evidence of her participation in a subsequent, similar

burglary on the same night; and (2) finding the evidence sufficient to prove she was guilty of

burglary.  For the following reasons, we affirm her conviction.

I.  BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth, as

the prevailing party at trial.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786

(2003).  That principle requires us to "discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (internal quotation marks and citations omitted).

Thomas drove Timothy Little (her half-brother), William Johnson, and Albert Felton from Charlottesville to Earlysville, where she parked her car in a church parking lot across the street from a local restaurant named Sal's Pizza (Sal's). It was late at night, between approximately 10:15 p.m. and 11:20 p.m.[1] Sal's was closed, along with "[e]verything around it." Thomas waited in the car while the others walked across the street to Sal's, broke into the restaurant through the back door, and stole a cash register containing approximately ninety-five dollars.[2] Within ten to fifteen minutes, the three men returned to the car with the stolen money, which they divided—including a share to Thomas. Thomas then drove them back to Charlottesville.

Little testified, over Thomas's objection, that later the same night Thomas drove Johnson, Felton, and him to Fox's Café (Fox's), in Charlottesville, which was also closed, whereupon he burglarized the cafe. Thomas testified that she parked her car nearby Fox's and again waited while the three men broke into the cafe and stole a small amount of cash. They returned to the car, and Thomas drove them away.

At her bench trial for the Sal's burglary, Thomas testified in her own behalf and denied any prior knowledge that Little, Johnson, and Felton intended to burglarize Sal's, claiming that she first learned about the burglary when they returned to the car with the stolen money. Thomas nevertheless admitted that she drove the three of them from Charlottesville to Earlysville and

---

[1] Salvatore Conigliaro, the owner of Sal's, testified that he closed the restaurant for the night and locked the doors at approximately 10:15 p.m. and then received a phone call at approximately 11:20 p.m. to return to the restaurant, following the burglary.

[2] Thomas indicated in her testimony that all three men committed the Sal's burglary. Little, who was the only one of the three men involved in the burglary to testify at Thomas's trial, stated that only he and Johnson broke into Sal's.

parked her car in the church parking lot across the street from Sal's late at night; watched the three men walk across the street to Sal's, even though Sal's and all of the other establishments in the area were closed; knew at the time "that something bad [was] going to happen there"; and waited for their return. Thomas also admitted that, after Little, Johnson, and Felton returned to the car, she received a share of the stolen money, and then drove them back to Charlottesville. Thomas's only explanation for why she drove the three men to Earlysville, and let them out in the dark in a church parking lot across the street from Sal's, was that one of the three men, Johnson, "was going to see a girl, one of his friends in Earlysville."

As to the Fox's burglary, Thomas admitted that she knowingly and willingly participated in that subsequent burglary, in her role as driver for Little, Johnson, and Felton. However, she argues that evidence concerning her participation in the Fox's burglary, to which she objected, was irrelevant, prejudicial and inadmissible.

The court found Thomas guilty of the Sal's burglary, in violation of Code § 18.2-91. In announcing the verdict, the trial judge stated there was not "any question in the world" that Thomas "knew what was going on," which made her "a principal in both [burglaries]." The court sentenced Thomas to ten years, suspending all but eight months of the sentence.

## II. ANALYSIS

### A. *Admission of Evidence of the Fox's Burglary*

Thomas first contends the trial court erred by allowing the Commonwealth to introduce into evidence, over her objection, the testimony of Little in relation to the Fox's burglary, including an account of Thomas's role in the crime.[3] However, "[e]vidence of other crimes, which are 'so intimately connected and blended with facts proving the commission of the offense

---

[3] While implicating Thomas in the Fox's burglary, Little equivocated when asked whether Thomas knew of the men's plan to burglarize Sal's before they actually committed the burglary, stating that he was "not even sure . . . that was a year ago."

charged may be admissible because it cannot be separated with propriety.'" Thornton v. Commonwealth, 31 Va. App. 825, 829, 525 S.E.2d 646, 648 (2000) (quoting Sutphin v. Commonwealth, 1 Va. App. 241, 246, 337 S.E.2d 897, 899 (1985)). That is, "[w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984). Further, "[t]he fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses." Id.

The evidence of Thomas's knowing participation in the Fox's burglary was admissible because it tended to prove her knowing participation in the similar and just completed burglary of Sal's. The burglaries occurred close in time to each other; Thomas was the driver in both incidents; and she shared in the proceeds. A trial judge's determination to admit such evidence will not be disturbed absent a clear abuse of discretion. Coe v. Commonwealth, 231 Va. 83, 88, 340 S.E.2d 820, 823 (1986).

### B. *Sufficiency of the Evidence*

When considering on appeal the sufficiency of the evidence presented below, we presume the judgment of the trial court to be correct and reverse only if the trial court's decision is plainly wrong or without evidence to support it. Davis v. Commonwealth, 39 Va. App. 96, 99-100, 570 S.E.2d 875, 876-77 (2002) (citations omitted); see also Correll v. Commonwealth, 269 Va. 3, 12, 607 S.E.2d 119, 123-24 (2005) (explaining that this standard applies to the judgment of a trial court sitting without a jury, which is entitled to "the same weight as a jury verdict" (citations omitted)). Thus, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Thomas contends there was insufficient evidence to establish that she was guilty of anything more than being an accessory after the fact to statutory burglary.[4] Her challenge to the sufficiency of the evidence is limited to the sole issue of whether she had prior knowledge of the perpetrators' intent to burglarize Sal's. Specifically, she asserts there was no proof of the requisite criminal intent on her part. We disagree.

Code § 18.2-18 provides that, in the case of every felony (with the exception of certain murders), a principal in the second degree "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." In such cases, "'[a] principal in the first degree is the actual perpetrator of the crime,'" whereas "'[a] principal in the second degree, or an aider and abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime.'" Muhammad v. Commonwealth, 269 Va. 451, 482, 611 S.E.2d 537, 554 (2005) (quoting Jones v. Commonwealth, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967)). However, to constitute a principal in the second degree, a person's

> "actual participation in the commission of the crime is not
> necessary. The test is whether or not he was encouraging, inciting,
> or in some manner offering aid in the commission of the crime. If
> he was present lending countenance, or otherwise aiding while

---

[4] For purposes of this case, based on the testimony of Little and Thomas, it is undisputed that at least Little and Johnson, if not also Felton, were principals in the first degree with respect to the burglary of Sal's. While no evidence in the record shows that they were convicted for the crime, their convictions were not a prerequisite to Thomas's conviction as an accomplice. See Taylor v. Commonwealth, 260 Va. 683, 688, 537 S.E.2d 592, 594 (2000).

another did the act, he is an aider and abettor or principal in the second degree."

Id. at 482, 611 S.E.2d at 554-55 (quoting Jones, 208 Va. at 372-73, 157 S.E.2d at 909).  Such

activity includes "'keeping watch or guard at some convenient distance'" during the commission

of the crime.  Pugliese v. Commonwealth, 16 Va. App. 82, 93, 428 S.E.2d 16, 24-25 (1993)

(quoting Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315 (1942)).

> "In order to render a person a principal in the second degree, . . . [his] presence need not be a strict, actual, immediate presence, such a presence as would make him an eye or earwitness of what passes, but may be a constructive presence.  So that if several persons set out together, or in small parties, upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each takes the part assigned him; some to commit the fact, *others to watch at proper distances and stations, to prevent a surprise, or to favor, if need be, the escape of those who are more immediately engaged*; they are all, provided the fact be committed, in the eyes of the law, present at it . . . ."

Dull v. Commonwealth, 66 Va. (25 Gratt.) 965, 977 (1875) (quoting 1 Russell on Crimes 27 (3d

ed. 1845)) (emphasis added); see also Sutton v. Commonwealth, 228 Va. 654, 666-68, 324

S.E.2d 665, 672 (1985) (applying Dull).

Under this standard, it is well established that the defendant's "mere presence and

consent" is not sufficient to constitute aiding and abetting.  Rollston v. Commonwealth, 11

Va. App. 535, 539, 399 S.E.2d 823, 825 (1991) (citing Underwood v. Commonwealth, 218 Va.

1045, 1048, 243 S.E.2d 231, 233 (1978)); see also Myers v. Commonwealth, 43 Va. App. 113,

125, 596 S.E.2d 536, 541 (2004) (reversing defendant's conviction for grand larceny upon

finding neither proof of his failure to oppose the theft, nor proof of any other circumstances,

upon which to find he aided and abetted in the theft); Triplett v. Commonwealth, 141 Va. 577,

585-86, 127 S.E. 486, 489 (1925) (reversing defendant's conviction for prohibition law violation

upon holding that his mere presence in store at time of sale of illegal whiskey was insufficient to

render him liable for aiding and abetting).  It must be shown that the defendant "'either [knew] or

[had] reason to know of the principal's criminal intention and must [have] intend[ed] to encourage, incite, or aid the principal's commission of the crime.'" Rollston, 11 Va. App. at 540, 399 S.E.2d at 826 (quoting McGhee v. Commonwealth, 221 Va. 422, 427, 270 S.E.2d 729, 732 (1980)); see also Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986) (explaining that defendant must have "intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it" (citation omitted)).

However,

> "proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, *in connection with other circumstances*, it is competent for the [trier of fact] to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same."

Pugliese, 16 Va. App. at 93-94, 428 S.E.2d at 25 (quoting Foster, 179 Va. at 99-100, 18 S.E.2d at 316) (emphasis added). Not only was Thomas constructively present at the scene of the Sal's burglary and expressing no opposition to it, Thomas drove Little, Johnson, and Felton to the crime scene (a closed business, along with all the other businesses in the area), waited for their return from a safe distance across the street in the dark, and then provided the transportation for their flight from the scene of the crime by driving the getaway car. See Murray v. Commonwealth, 210 Va. 282, 283, 170 S.E.2d 3, 4 (1969) (citations omitted) ("trier of fact can consider flight of the accused from the scene of the crime as a circumstance tending to establish guilt").

Moreover, during her testimony, Thomas implicitly admitted her guilty knowledge of the criminal venture. On direct examination in response to the question, "[Y]ou're not going to tell the [c]ourt that you thought that [Little, Johnson, and Felton] were going to do something good that night, right?," Thomas answered unequivocally, "No." Thomas then admitted on

cross-examination to knowing before the burglary that "something bad [was] going to happen [at Sal's]."

The trial judge, as the trier of fact, rejected Thomas's explanation for her presence at the scene of the crime with all three perpetrators (i.e., that she had driven Johnson to Earlysville to meet a girl). The trial judge was under no obligation to accept such an account upon finding it to be "unworthy of belief." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). Having rejected Thomas's "attempted explanation as untrue," the trial judge was entitled to "draw the reasonable inference that [her] explanation was made falsely in an effort to conceal [her] guilt. A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." Id. (citing Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002); Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982); Toler v. Commonwealth, 188 Va. 774, 782, 51 S.E.2d 210, 214 (1949)); see also Wright v. West, 505 U.S. 277, 296 (1992) (trier of fact may consider perjured testimony as affirmative evidence of guilt); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981); Rollston, 11 Va. App. at 548, 399 S.E.2d at 831.

Finally, Thomas's admitted participation in the Fox's burglary tends to prove her culpability in the Sal's burglary.

The facts in this case, including the fair inferences to be drawn from them, provided sufficient evidence for the trial judge reasonably to find that Thomas knew the perpetrators intended to burglarize Sal's and that she intended to aid and abet them in the commission of the crime by her overt acts.[5] See Hood v. Commonwealth, 269 Va. 176, 183, 608 S.E.2d 913, 917

---

[5] In asserting the evidence was insufficient to prove that Thomas was guilty of aiding and abetting the perpetrators of the Sal's burglary, the dissent erroneously focuses solely upon Little's testimony, giving no regard to Thomas's incriminating testimony. In conducting our review of this case, we must "weigh the sufficiency of the evidence by examining the entire record." Carter, 223 Va. at 531, 290 S.E.2d at 867; see also Tolley v. Commonwealth, 216 Va.

- 8 -

(2005) (affirming defendant's conviction for first-degree murder as principal in second degree where defendant waited in getaway car—after "know[ing] something 'was going to happen . . . that night'"); Grant v. Commonwealth, 216 Va. 166, 169, 217 S.E.2d 806, 808 (1975) (affirming defendant's conviction for robbery as principal in second degree where defendant waited in getaway car); Whitbeck v. Commonwealth, 210 Va. 324, 327, 170 S.E.2d 776, 778 (1969) (affirming defendant's conviction for burglary as principal in second degree where defendant waited in getaway car); Dickerson v. Commonwealth, 36 Va. App. 8, 15, 548 S.E.2d 230, 233 (2001) (affirming defendant's conviction for robbery as principal in second degree where defendant waited in getaway car); Rollston, 11 Va. App. at 548-49, 399 S.E.2d at 831 (affirming defendant's conviction for murder as principal in second degree where defendant acted as lookout).  As in this case, "[i]ntent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991) (citing Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991)); see also Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).  Likewise, "the fact of guilty knowledge may be inferred from the circumstances of the particular case."  Law v. Commonwealth, 75 Va. 885, 889 (1881) (citations omitted).  "Circumstantial evidence[,] when sufficiently convincing, is entitled to the same weight as direct evidence."  Riner v. Commonwealth, 268 Va. 296, 303-04, 601 S.E.2d 555, 558-59 (2004) (citing Derr v.

---

341, 347, 218 S.E.2d 550, 554 (1975); Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948); Powell v. Commonwealth, 31 Va. App. 167, 171, 521 S.E.2d 787, 789 (1999); Bagheri v. Commonwealth, 12 Va. App. 1071, 1074, 408 S.E.2d 259, 261-62 (1991).  See generally Ronald J. Bacigal, Criminal Procedure, § 17:27 (2006) ("If the court denies the [defendant's] motion made at the conclusion of the Commonwealth's case [to strike the evidence on grounds of insufficiency, as in the instant case], defense counsel must make a tactical decision to either stand on the motion or proceed with the defense case.  If the defense presents its case the court will weigh the sufficiency of the evidence by examining the entire record." (citations omitted)).

Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991); Epperly v. Commonwealth, 224 Va. 214, 228, 294 S.E.2d 882, 890 (1982)).

## III.  CONCLUSION

For these reasons, we affirm Thomas's conviction.

Affirmed.

Benton, J., dissenting.

The Commonwealth indicted Samantha Leigh Thomas for burglary of Sal's Pizza restaurant in Albemarle County. At trial, Timothy Little testified for the Commonwealth and admitted he and William Johnson committed the burglary at the restaurant. Little testified that he asked Thomas, who is his sister, to drive him to Sal's Pizza restaurant because he had no car. He conceded he went to the restaurant with the intent "to break into the place," but he did not testify his sister had prior knowledge of his intention. Responding to the prosecutor's questions, he explained:

> Q: Okay, and her purpose was to drive you out there, you broke in and then you came back.
>
> A: Yeah, I didn't have no ride so that was my ride.
>
> Q: Okay. All right, and she waited for you while you went in and came out.
>
> A: Yeah, I had her just sit there.[6]

Little testified that, after his sister drove them to the restaurant, she remained in the parked car "across the street" as he and Johnson exited the car. Little and Johnson walked through a wooded area, crossed the street, and went to the opposite side of the restaurant that cannot be seen from the place where Thomas sat in the parked car.

Little and Johnson broke into the restaurant, took the cash register, and abandoned it in a field near the restaurant after taking money from it. Little did not testify that Albert Felton was present or assisted him in the burglary. Indeed, on direct examination he testified as follows:

---

[6] Thomas testified about her reason for driving Little, her brother, and Johnson to the area near Sal's restaurant that night. She explained that neither her brother nor Johnson owned a car and that she often drove them to work and to other places. That evening she drove them to Earlysville, where Sal's Pizza restaurant is located, because Johnson "was going to see a girl, one of his friends in Earlysville."

Q: Who broke in?

A. Me and William Johnson.

On cross-examination, Little testified that the only persons in the car when they went to Sal's restaurant were Thomas, Little, and Johnson.

This direct testimony by one of the actual burglars did not establish that the burglars told Thomas of their plan or that Thomas knew their plan. It did demonstrate, however, that Thomas could not see the burglars break and enter the building. In short, this evidence failed to prove Thomas was a principal in the second degree to the burglary. "'A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done.'" James v. Commonwealth, 178 Va. 28, 33, 16 S.E.2d 296, 298 (1941) (citation omitted). "[T]o establish the defendant as an aider and abettor, he must be present and shown to have procured, encouraged, countenanced or approved commission of the crime; he must share the criminal intent of the actual perpetrator or be guilty of some overt act." Hall v. Commonwealth, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983).

The prosecutor never asked Little on direct examination whether he told Thomas about his plan to commit a burglary or whether he enlisted Thomas's help in committing the burglary. Significantly, Little testified on cross-examination that he "d[id]n't know if he told [Thomas] or not" that he intended to commit a burglary. Little also testified he "kn[e]w after [he and Johnson] were done [that Thomas] knew about [the burglary]," explaining that he shared with her some "chips and soda" and "a little bit" of money he took from the restaurant. Little's testimony concerning his belief about Thomas's state of mind *after* the burglary was based upon his conjecture. He testified that he believed "Thomas just assumed" how he obtained the money and that he believed he then told his sister about the burglary. He explained:

- 12 -

Q: Okay. And when you got back in the car from Sal's, she knew, at least, after the fact, that you had stolen something because you had it in your hands, right?

A: I think I told my sister what I did.

Little testified that Thomas then drove him and Johnson back to Charlottesville. Little's testimony implicates a fundamental principle of criminal law. "[T]he burden is upon the Commonwealth to prove every essential element of the offense beyond a reasonable doubt." Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997). To meet that burden, "'[t]he evidence must exclude every reasonable hypothesis of innocence and be consistent only with the guilt of the accused.'" Id. (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)). Little's testimony, however, raises the reasonable hypothesis that Thomas first learned of the burglary after Little and Johnson completed the burglary and that, therefore, she had no prior knowledge of the burglary.[7]

Because Little, the actual burglar, did not testify that he told Thomas of his intention to commit the burglary before he exited the car and, indeed, testified that he thought he told her about the burglary only when he returned to the car, the prosecutor sought to prove by Little's testimony that Thomas later drove the men to her aunt's restaurant, which the men burgled. Indicating that "this is not a jury trial; it's a bench trial," the prosecutor asserted that this prejudicial evidence provided a basis upon which the judge could infer that Thomas must have known about the earlier burglary at Sal's Pizza restaurant. This reasoning improperly suggests a

---

[7] Thomas testified that Little gave her some money after they returned to Charlottesville but that she knew by then that something bad had happened. Even if the evidence was sufficient to prove Thomas was an accessory after the fact, the Commonwealth had not indicted her for being an accessory after the fact to the burglary and, therefore, could not convict her of that crime. See Commonwealth v. Dalton, 259 Va. 249, 255, 524 S.E.2d 860, 863 (2000) (holding that "before a defendant can be tried and convicted of being an accessory after the fact, [the defendant] must be charged with that offense" because the crime of being an accessory after the fact of a specified crime is not a lesser-included offense of that specified crime).

trial judge can engage in conjecture to uphold the Commonwealth's theory of guilt. I would hold that the trial judge erred in permitting Little to testify about the later burglary at Fox's Café.

On brief, the Commonwealth asserted that "evidence of Thomas' knowing participation in the Fox's Café burglary clearly was admissible because it tended to prove [Thomas's] knowing participation in the similar and just carried out break-in of Sal's Pizza." As we noted in Meadows v. Commonwealth, 9 Va. App. 243, 385 S.E.2d 906 (1989),

> [o]ther crimes evidence which tends to prove the defendant's knowledge has been permitted in two narrow circumstances: where knowledge of a particular fact is an essential element of the crime which the Commonwealth must prove beyond a reasonable doubt, or where the offenses were interrelated so that evidence of one tended to show the defendant's guilty knowledge of the other.

Id. at 246, 385 S.E.2d at 908 (citing Stockton v. Commonwealth, 227 Va. 124, 143, 314 S.E.2d 371, 383 (1984); Collins v. Commonwealth, 226 Va. 223, 229, 307 S.E.2d 884, 889 (1983); Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983)).

The Commonwealth cites the following passage from Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609 (1990), to support its thesis and the trial judge's ruling:

> "In determining whether evidence is admissible, much must be left to the sound discretion of the trial court. Especially is this true where the evidence is circumstantial. Where the determination of facts depends upon circumstantial evidence, in no case is evidence to be excluded of facts or circumstances connected with the transaction from which an inference can be reasonably drawn as to the truth of the disputed fact."

Id. at 99, 393 S.E.2d at 622 (quoting Stamper v. Commonwealth, 220 Va. 260, 269-70, 257 S.E.2d 808, 815 (1979)). In Spencer, the defendant objected to evidence that tended to prove his modus operandi: that he selected his victims because they frequented a specific location and that an "infinity sign" found on one of the victim's thighs was found drawn on the box spring under his mattress. 240 Va. at 98-99, 393 S.E.2d at 621-22. In Stamper, the defendant sought to exclude evidence that demonstrated three murders occurred during the course of a robbery. 220

- 14 -

Va. at 265-67, 257 S.E.2d at 813-14.  Thus, the evidence in <u>Spencer</u> and <u>Stamper</u> was clearly connected to the transactions for which the defendants were indicted.

In this case, the Commonwealth contends that "evidence of prior or subsequent similar acts is admissible to eliminate the element of innocent intent and to corroborate the proof relied upon for conviction."  The Commonwealth's evidence did not prove Thomas broke or entered Sal's Pizza restaurant and did not prove she acted as a lookout.  Thus, the issue is not Thomas's intent upon entry to the restaurant but, rather, whether she knew Little's intended conduct when she drove him to the area.  The Commonwealth argued that Little's testimony about Thomas driving the burglars to Fox's Café later that night proved she earlier knew "what was going on" at Sal's Pizza restaurant.

When the issue is the "knowledge" of the accused about specific criminal conduct, evidence of other criminal conduct generally is not admissible except in well-defined circumstances.  <u>Eccles v. Commonwealth</u>, 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973).  Mere proof of knowledge of and participation in one criminal event is inadmissible as a circumstance to prove knowledge of another criminal event that occurred at another time.  <u>Id.</u>  The Commonwealth's assertion that Thomas's "knowing participation" in the Fox's Café burglary is a basis for inferring her knowledge of the prior burglary when it was committed finds no support in the case law.  Simply citing cases about use of other crimes to prove "intent" is no justification for using prejudicial evidence in this case.  This assertion is little more than an *ipse dixit*.  "Such evidence implicating an accused in other crimes unrelated to the charged offense . . . may confuse the issues being tried and cause undue prejudice to the defendant."  <u>Guill v. Commonwealth</u>, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998).  Here, where the Commonwealth's own witness testified that he first told Thomas of the burglary when he returned to the car, the legitimate probative value of the evidence of the later burglary is

- 15 -

non-existent.  When the probative value of other crimes evidence does not outweigh its prejudicial effect, it is inadmissible.  Id. at 139, 495 S.E.2d at 491-92.

This is not a case where the second burglary is connected with the transaction at issue in this prosecution - - the Sal's Pizza burglary.  The evidence proved that Thomas drove the men from Sal's Pizza restaurant to an apartment in Charlottesville.  At some later time, not identified, Thomas drove the men to Fox's Café.  No evidence proved Thomas or anyone else went to Sal's Pizza restaurant with the intent to later commit a burglary at Fox's Café.  Indeed, the only evidence concerning the impetus to burgle Fox's Café was Thomas's testimony that Albert Felton later hatched the scheme to burgle Fox's Café.

As the Supreme Court held in Day v. Commonwealth, 196 Va. 907, 912-14, 86 S.E.2d 23, 25-27 (1955), and Barber v. Commonwealth, 182 Va. 858, 863-67, 30 S.E.2d 565, 566-69 (1944), evidence of other crimes committed at a different time and involving another place is inadmissible to show the accused committed the charged crime, which occurred at another time and place.  If the circumstances of the other offenses "'denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to prejudice the minds of the [trier of fact], and for this additional reason they ought to be excluded.'"  Day, 196 Va. at 913, 86 S.E.2d at 26 (citation omitted).  This is a long standing principle in our jurisprudence.

> Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy.  For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto.  Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence.

Bunting v. Commonwealth, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967).

Simply put, this case falls squarely within the general rule that evidence of other crimes is inadmissible to prove the crime charged.  Williams v. Commonwealth, 203 Va. 837, 840-41, 127

S.E.2d 423, 426 (1962). A mere assertion that another crime proves "knowledge" is insufficient to establish an exception to the general rule. See Eccles, 214 Va. at 22, 197 S.E.2d at 333. The evidence of the second burglary tended only to impermissibly prove Thomas was disposed to commit burglary and, thus, likely knew of the first burglary. See Hagg v. Commonwealth, 222 Va. 599, 604, 283 S.E.2d 187, 190 (1981) (holding that evidence that suggests the likelihood of guilt because of a propensity to commit such a crime is inadmissible). I would hold, therefore, that the trial judge erred in permitting Little to testify about the occurrence of a later burglary at Fox's Café.

Even if we ignore these well established principles, the evidence in this case was insufficient to prove Thomas guilty of the burglary at Sal's Pizza restaurant. The Supreme Court repeatedly has held that "where evidence essential to proof of the crime is equally susceptible of two interpretations, one of which is consistent with innocence, that interpretation which incriminates may not be arbitrarily or unreasonably adopted." Washington & Old Dominion R.R. v. City of Alexandria, 191 Va. 184, 187, 60 S.E.2d 40, 42 (1950). See also Commonwealth v. Smith, 259 Va. 780, 782, 529 S.E.2d 78, 79 (2000). This rule is applicable here because the actual burglar testified in the Commonwealth's case-in-chief that he "d[id]n't know if [he] told [Thomas] or not" about his plan to burgle Sal's Pizza restaurant and further testified it was only when he returned to the car with the chips, soda, and money that he thought he "told [Thomas] what [he] did." Thus, the evidence in this case, from the Commonwealth's own witness, proved no more than Thomas's presence in the car when the burglars entered Sal's Pizza restaurant and her knowledge after-the-fact of the burglary. If Thomas's testimony is considered, as the majority urges, she testified that she had no knowledge of the burglary at Sal's Pizza restaurant. She explained that she took the men to Earlysville to see Johnson's female friend, and she waited in the car for them.

- 17 -

It is, of course, well settled that mere presence and consent are not sufficient to constitute one an aider and abettor in the commission of a crime. "There must be something done or said by him showing (a) his consent to the felonious purpose and (b) his contribution to its execution. To make him an aider or abettor, he must be shown to have 'procured, encouraged, countenanced, or approved' the commission of the crime. * * * To constitute one an aider and abettor, it is essential that he share the criminal intent of the principal or party who committed the offense."

Jones v. Commonwealth, 208 Va. 370, 373, 157 S.E.2d 907, 909 (1967) (citations omitted).

The evidence proved, at best, only that Thomas was an accessory after the fact to the Sal's Pizza burglary. Thomas's guilty knowledge from that point forward during the night is simply irrelevant to the issue of her knowledge during her earlier presence in the car across the street from Sal's Pizza restaurant.

The mere presence at a place where a crime is committed is not enough to make one an aider and abettor. Even a willingness that it be done is not sufficient unless such willingness issues into suggestion or encouragement or help. That this defendant was in the [area] is admitted. That she did, said or suggested anything that contributed to the [burglary] is not shown, nor is it a necessary inference from anything that is proved. That she saw the act done is not shown nor is it a necessary inference from anything proved that she did see it. It is only by conjecture that it may be said that she took any part. She should not stand convicted on supposition. It is important that crime be punished. It is even more important that the one punished should first be proved guilty by the evidence. In order for inferences to amount to evidence they must be inferences based on facts that are proved, and not inferences based on other inferences. These expressions by this court make entirely clear the conclusion required in this state of the record.

Smith v. Commonwealth, 185 Va. 800, 819, 40 S.E.2d 273, 282 (1946).

As the Supreme Court has consistently held, "the Commonwealth's evidence must be consistent only with the guilt of the accused," Moore, 254 Va. at 189, 491 S.E.2d at 742, and the evidence is insufficient to support a conviction when it is merely "consistent with innocence of the accused regarding the crime for which [she] is charged." Id. "It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a

- 18 -

suspicion or even a probability of guilt. Conviction cannot rest upon conjecture." Smith v. Commonwealth, 192 Va. 453, 461, 65 S.E.2d 528, 533 (1951). "Suspicion, . . . no matter how strong, is insufficient to sustain a criminal conviction." Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981). Because the circumstances here are merely suspicious and do not exclude the reasonable hypothesis that Thomas was present in the car without knowledge of the impending burglary at Sal's Pizza restaurant, the Commonwealth has failed to prove Thomas was a principal in the second degree to the burglary.

For these reasons, I would reverse the conviction.